2025 IL App (2d) 240416-U
No. 2-24-0416
Order filed November 24, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| BRYAN PLETCHER, | ) | Appeal from the Circuit Court |
| | ) | of Lake County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 23-MR-470 |
| | ) | |
| VILLAGE OF LIBERTYVILLE POLICE | ) | |
| PENSION BOARD, et al., | ) | Honorable |
| | ) | Luis A. Berrones, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices Birkett and Mullen concurred in the judgment.

**ORDER**

¶ 1   *Held*:  Plaintiff's appellate brief violates Illinois Supreme Court Rules and was almost wholly created with the aid of artificial intelligence. Defendant's motion for sanctions against plaintiff pursuant to Illinois Supreme Court Rule 375(a) is granted and plaintiff's brief is hereby stricken and the appeal dismissed.

¶ 2                                  I. BACKGROUND

¶ 3   Plaintiff was hired as a Village of Libertyville (the Village) police officer on September 15, 2003. On June 12, 2020, he filed an application for not on duty disability pension pursuant to section 3-114.2 of the Illinois Pension Code (40 ILCS 5/3-114.2 (West 2020)) alleging disability

based on congestive heart failure. Plaintiff subsequently withdrew his application and returned to full duty with the Village.

¶ 4    On May 29, 2022, the Village issued plaintiff a letter of reprimand and placed him on a performance improvement plan for certain violations of department orders and policies. On July 18, 2022, plaintiff filed his second application for not on duty disability pension pursuant to section 2-114.2 of the Illinois Pension Code, this time alleging disability based on congestive heart failure, myocarditis, heart failure, and cardiomyopathy.

¶ 5    On February 15, 2023, and July 6, 2023, the Village of Libertyville Pension Board (the Board) held a hearing on plaintiff's application. The Board admitted 27 exhibits into evidence to which plaintiff did not object. Plaintiff did not offer any exhibits into evidence.

¶ 6    The evidence adduced at the hearings showed that plaintiff had consistently failed to follow orders from various doctors, leading to exacerbation of his medical issues. Pursuant to section 3-112 of the Illinois Pension Code, the Board had plaintiff examined by three doctors to determine whether he was disabled. Dr. Jason C. Robin, Dr. Dan J. Fintel, and Dr. Dianne L. Zwicki were deposed and all concluded that had plaintiff remained compliant with his medications, his hypertension would have remained controlled and he would not have developed nonischemic cardiomyopathy.

¶ 7    On October 30, 2023, the Board issued its decision and concluded that plaintiff had not proven the required elements to obtain a not on duty disability pension pursuant to section 3-114.2 of the Illinois Pension Code. The Board found, in relevant part, as follows:

"The Applicant's hypertensive nonischemic cardiomyopathy is a condition the Applicant could remedy without significant danger to life or health or extraordinary suffering. All the medical evidence in the record supports a conclusion the prescribed

medications offered a reasonable prospect for relief. The Applicant's refusal to consistently take his medications and to stop taking his medications against the advice of all his doctors was not reasonable or within the bounds of reason. All the medical evidence supports a conclusion that if the Applicant took his medications that he (1) would not have developed hypertensive nonischemic cardiomyopathy and (2) that he would recover from his hypertensive nonischemic cardiomyopathy such that he could perform police duties. Every doctor testified that but for the Applicant's refusal to undergo reasonable medical treatment, the Applicant would more than likely not have developed hypertensive nonischemic cardiomyopathy. Additionally, the Applicant has not testified credibly regarding his continued use of the prescribed medications. Therefore, the Applicant is not 'disabled' with the meaning of the Pension Code, notwithstanding his uncontrolled hypertension, hypertensive nonischemic cardiomyopathy, and two episodes of CHF which required hospitalization."

¶ 8    On November 30, 2023, plaintiff filed a complaint for administrative review of the Board's decision. In the brief supporting his complaint, plaintiff cited to several cases that did not exist. In its responsive brief, the Board noted the nonexistent cases to the trial court. The matter proceeded to a hearing on June 25, 2024. Plaintiff attempted to introduce evidence and exhibits not brought forth in the original pension board hearings. The Board argued that those exhibits should not be allowed at that stage of the proceedings. The trial court agreed. Following plaintiff's arguments, the trial court indicated that upon initial review of the evidence, it believed plaintiff had a strong case. However, as plaintiff had failed to introduce any evidence or exhibits to the Board to support his case, it had to rule against allowing him to introduce that evidence and affirm the Board's denial of his disability application.

¶ 9    This appeal followed.

¶ 10                        II. ANALYSIS

¶ 11    After plaintiff filed his brief with this court, the Board filed its responsive brief and a motion for sanctions pursuant to Illinois Supreme Court Rule 375(a) and 375(b). The motion alleged various violations of Illinois Supreme Court Rule 341 for fictitious citations to the administrative record, citations to nonexistent authorities, and fictitious holdings from actual authorities. The Board asks this court to strike plaintiff's brief, dismiss the appeal, and impose monetary sanctions including reasonable attorney's fees and costs. It is through this lens that we limit our analysis.

¶ 12    At the outset, we must note that we recognize that plaintiff is *pro se*. However, in Illinois, parties choosing to represent themselves without an attorney are "presumed to have full knowledge of applicable court rules and procedures and must comply with the same rules and procedures as would be required of litigants represented by attorneys." *In re Estate of Pellico*, 394 Ill. App. 3d 1052, 1067 (2009).

¶ 13    Plaintiff cites to five cases in his brief that do not exist. He cites to "*Pravdic v. Board of Trustees of the University of Illinois*, 2013 IL App (1st) 220689," a nonexistent case, and quotes the fictitious trial court as holding "when objective medical evidence demonstrates that hypertension persists despite appropriate medication regimens, boards cannot attribute this persistence solely to non-compliance without substantial supporting evidence." This alleged holding would be quite favorable to plaintiff's case if it was real. After the submission of his appellate brief, plaintiff filed a motion to correct citation errors. This court denied that motion. However, for the sake of fully understanding plaintiff's argument, we look to the case that he

claims to contain the favorable holding, *Prawdzik v. Board of Trustees of Homer Township Fire Protection District Pension Fund*, 2019 IL App (3d) 170024. No such quote exists in that case.

¶ 14    Plaintiff cites to "*Hoffman v. Retirement Board of Fireman's Annuity*, 2020 IL App (1st) 190182," another fictitious case, for its alleged holding that "a pension board cannot simply adopt selective medical opinions while ignoring contrary evidence in the record." While we disagree with plaintiff's assertion that the Board in the present case behaved in such a manner, we again look to the case plaintiff asserts that he meant to cite in his motion to correct citation errors, *Howe v. Retirement Board of the Fireman's Annuity & Benefit Fund of Chicago*, 2015 IL App (1st) 141350. In *Howe*, a firefighter applied for disability benefits after dislocating his shoulder to aid a person who had fallen on train tracks. *Howe*, 2015 IL App (1st), ¶¶ 8-11 The board denied, explaining the firefighter had not shown he was performing an "act of duty" as defined by Illinois statute. *Id.* at ¶ 31. The "act of duty" language was the argument appealed to this court. See *Id*. at ¶ 39-40. The only real mention of medical opinions is the firefighter's treatment of his dislocated shoulder, where he received several types of therapy and three surgical procedures to remove scar tissue and bone spurs. *Id*. at ¶14-20. Again, that case does not contain the holding that plaintiff claims, even if he really meant to cite it in place of the fictitious case.

¶ 15    Plaintiff's next fictitious citing is to "*Schoenbeck v. Board of Trustees of the Police Pension Fund of the Village of Oak Lawn*, 2021 IL App (1st) 200557." He claims that the fictitious court there "specifically recognized the cumulative effects of stress from police work on cardiovascular health." Plaintiff goes on to quote this court as noting that "the physical and emotional demands of police work, particularly when performed over many years, can be a significant factor in the development of cardiovascular conditions." His motion to correct citation errors claims that the real case should have been *Miller v. Board of Trustees of Oak Lawn Police Pension Fund*, 2019

IL App (1st) 172967. A reading of that case contains no such language as quoted by plaintiff, nor does the case ever mention heart conditions.

¶ 16 Plaintiff cites to the fictitious case of "*Pedrick v. Village of Downers Grove*, 115 Ill. App. 3d 315 (1983)" to support his assertion that the Board violated the timeframe for issuing its decision pursuant to section 3-148 of the Illinois Pension Code. He maintains that this fictitious case held that "a 14-month delay was found impermissibly long and violated the officer's right to a timely review." While this argument is dubious because section 3-148 of the Illinois Pension Code contains no timeframe for issuing a final decision (see 40 ILCS 5/3-148 (West 2024), we again look to the case plaintiff claim he meant to cite, *Lambert v. Downers Grove Fire Department Pension Board*, 2013 IL App (2d) 110824. In *Lambert*, a firefighter applied for an off-duty pension due to an unhealing knee injury. *Lambert*, 2013 IL App (2d), ¶3. The board denied the application, making note that the firefighter's "subjective" statements about his pain, videos admitted into evidence of the firefighter moving around his house, and the firefighter's failure to renew his paramedic license. *Id.* at ¶20. That case has nothing to do with the pension board's timeframe in issuing a final decision, nor does it mention section 3-148 of the Illinois Pension Code.

¶ 17 Finally, plaintiff cites to the fictitious case of "*Krahel v. Oakbrook Terrace Firefighters' Pension Board*, 2021 IL App (2d) 200165." Again asserting issues with the timeframe of the Board's decision, plaintiff claims that in this case "the court overturned a denial because a 4-month delay in issuing the written ruling violated the promptness mandate." In his motion to correct citation errors, plaintiff admits that the case should be withdrawn "as it does not address the legal issues for which it was cited." Not only does it not address the legal issues for which plaintiff cited it, the case does not exist at all.

¶ 18    Beyond fictitious cases, plaintiff's brief does cite to actual cases where he provides this court with fictitious quotes and holdings. He cites to *Bowlin v. Murphysboro Firefighters Pension Board of Trustees*, 368 Ill. App. 3d 205 (2006), and quotes the court as holding "consistent attempts to follow medical treatment, even if not perfectly executed, do not justify a finding of non-compliance sufficient to deny benefits." However, *Bowlin* does not support the statement even as a paraphrased argument. In *Bowlin*, a firefighter applied for a pension after suffering from two work-related back injuries. *Bowlin*, 368 Ill. App. 3d at 206. During application review, the board inquired about a video of the firefighter white water rafting after the injury. *Id*. at 208 The firefighter responded that it was his understanding that he was permitted to engage in household and recreational activities that did not exceed weight and physical limitations. *Id.* The board denied the application, believing the video was proof the firefighter continued to engage in strenuous activity. *Id*. at 209. The court disagreed, noting that physicians never restricted the firefighter from engaging in recreational activities. *Id*. at 212-13. Therefore the *Bowlin* firefighter was following the medical treatments of his doctors, not attempting to do so, as plaintiff suggests..

¶ 19    Plaintiff quotes *Johnson v. Retirement Board of Policemen's Annuity and Benefit Fund*, 114 Ill. 2d 518 (1986), as holding that "a mere inability to comply with treatment does not negate a disability claim." However, *Johnson* does not support this statement even as a paraphrased argument. In *Johnson*, a police officer was crossing a wet street to assist a civilian when he fell on his arm, resulting in the permanent disability of his right hand. *Johnson*, 114 Ill. 2d at 520. The officer filed for benefits and the board denied the claim since they believed his injury was not the result of a special risk and therefore not an act of duty. *Id*. at 521. As the court itself stated "the sole issue on appeal [was] whether [the police officer's] injury was sustained as a result of an act of duty, entitling him to duty-disability benefits." *Id*. at 520.

¶ 20    Plaintiff quotes *Knight v. Village of Bartlett*, 338 Ill. App. 3d 892 (2003), as holding that "the mere fact that a condition persists despite treatment does not support an inference of non-compliance." *Knight* does not support this statement even as a paraphrased argument. In *Knight*, an officer suffered from homicidal thoughts after working in an undercover enforcement task force. *Knight*, 338 Ill. App. 3d at 895-97. After being on leave, the officer was told to surrender his work attire and was not allowed to return to duty. *Id.* at 896, 899. The officer filed for a disability pension but the board denied, finding that the officer was not fully disabled. *Id*. at 899. The court's analysis then was focused on whether the officer even had a disability and, if so, was it a result of being on duty. *Id.* at 899-905. Non-compliance was not mentioned in this case.

¶ 21    Plaintiff quotes *Roszak v. Kankakee Firefighters' Pension Board*, 376 Ill. App. 3d 130 (2007), as holding that "a pension board cannot adopt the conclusions of their selected experts while ignoring substantial contrary evidence." *Roszak* does not support this statement. In *Roszak,* a paramedic who had injured his back and shoulder during a house-call kept putting surgery off due to insurance issues. *Roszak*, 376 Ill. App. 3d at 132-33. After the paramedic had surgery he began attending physical therapy but had to stop due to pain. *Id.* at 134. During the paramedic's application for disability, the board asked him several questions they found he was evasive about. *Id.* at 137. Finding the paramedic to be a non-credible witness, the board denied his disability benefits. *Id.* While citing to medical evidence from their reviewing physicians, the board also discounted the opinions from these same doctors that the paramedic was still disabled because it "was based on [the doctors'] subjective determinations of what the [paramedic]… had told [the doctors]." *Id.* at 137-38. The court noted that "the board's discounting of [the reviewing] doctor's reports based on the applicant's suspect credibility was an error," and therefore against the manifest weight of the evidence. *Id.* at 144. This is a different standard that plaintiff is asking us

to consider here. Had plaintiff cited to this case with a statement regarding an administrative board having disregarded medical evidence that included the self-reporting of the applicant, that may have been applicable. Alas, it is reduced to another misleading assertion by plaintiff.

¶ 22    Plaintiff also cites to *Jones v. Board of Trustees of Police Pension Fund of City of Bloomington*, 348 Ill. App. 3d 1064 (2008), and states that "the court established that shift work over extended periods can be considered a contributing factor to cardiovascular conditions. Also citing the *Jones* court, plaintiff states "disruption of circadian rhythms through extended periods of shift work can contribute to the development and progression of hypertension and related cardiovascular conditions." Neither of these statements are supported by *Jones*, where court's opinion focuses on the phrase "act of duty" and whether a police officer who had been struck by a van while on patrol was injured in an "act of duty." *Jones* 348 Ill. App. 3d at 1074. There is no mention of hypertension or related cardiovascular conditions within the text.

¶ 23    The final actual case with a fictitious quote cited by plaintiff is *Johnston v. Weil*, 241 Ill. 2d 169 (2011). Plaintiff assertion that the court held "when genetic factors may influence the effectiveness of treatment or the progression of a condition, these factors must be considered as part of a complete medical evaluation" do not align with the actual holding in *Johnston*. In *Johnston*, a mother and her parents brought an action claiming that information obtained by a therapist in connection to child custody proceedings fell within "confidential communications with a plaintiff" under the Confidentiality Act. *Johnston* 241 Ill. 2d at 172. There is no mention of genetics within the case.

¶ 24    In addition to the above misrepresentations, throughout his brief plaintiff argues that exhibits A-F provide additional support for his various arguments regarding the Boards denial of his application. Without delving into the substance of these exhibits, plaintiff never introduced this

evidence, or any other evidence, into the administrative record. "No new or additional evidence in support of or in opposition to any finding, order, determination or decision of the administrative agency shall be heard by the court. The findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct." 730 ILCS 5/3-110 (West 2024). In other words, neither the trial court, nor this court, can entertain exhibits that plaintiff did not introduce to the Board. Plaintiff is well aware of this as he tried to introduce these exhibits to the trial court through his complaint for administrative review. The exhibits were stricken. The same is true here. We must reject plaintiff's arguments that rely on these exhibits, which make up the bulk of his appeal.

¶ 25    Returning to the fictitious cases and quotes cited by plaintiff and discussed above, they were hallucinated by artificial intelligence (AI). The Illinois Appellate Court, Fourth District, recently considered this issue and stated:

"[T]he Illinois Supreme Court AI policy explicitly permits the use of AI. However, attorneys must use AI tools wisely. We reiterate the supreme court's reminder that '[a]ll users must thoroughly review AI-generated content before submitting it in any court proceeding to ensure accuracy and compliance with legal and ethical obligations.' [Ill. Sup. Ct., Illinois Supreme Court Policy on Artificial Intelligence (Jan. 1, 2025), https://ilcourtsaudio.blob.core.windows.net/antilles-resources/resources/e43964ab-8874-4b7a-be4e-63af019cb6f7/Illinois% 20Supreme% 20Court% 20AI% 20Policy.pdf [https://perma.cc/WCE6-WZE5]]. Flagrant and unprincipled use of AI without ensuring the accuracy of the generated response 'is an abuse of the adversary system' (*Mata* [v. *Avianca, Inc.*, 678 F. Supp. 3d 443, 461 (S.D.N.Y. 2023]), as it wastes court resources that would be better spent elsewhere." *In re Baby Boy*, 2025 IL App (4th) 241427, ¶ 131.

¶ 26    In *Baby Boy*, the reviewing court found that the petitioner's attorney's careless use of AI warranted sanctions. The court then ordered that the attorney disgorge the payment that he had received for his services, fined him $1,000, and referred him to the Illinois Attorney Registration and Disciplinary Commission based on his violation of the rules of professional conduct. *Id.* ¶¶ 129-130, 132.

¶ 27    Rule 375(a) states as follows:

> "If after reasonable notice and an opportunity to respond, a party or an attorney for a party or parties is determined to have willfully failed to comply with the appeal rules, appropriate sanctions may be imposed upon such a party or attorney for the failure to comply with these rules. Appropriate sanctions for violations of this section may include an order that a party be barred from presenting a claim or defense relating to any issue to which refusal or failure to comply with the rules relates, or that judgment be entered on that issue as to the other party, or that a dismissal of a party's appeal as to that issue be entered, or that any portion of a party's brief relating to that issue be stricken. Additionally, sanctions involving an order to pay a fine, where appropriate, may also be ordered against any party or attorney for a party or parties." IL. S. Ct. R. 375(a) (eff. Feb. 1, 1994).

¶ 28    Plaintiff's status as a *pro se* litigant does not excuse his careless reliance on AI. See *Holzrichter v. Yorath*, 2013 IL App (1st) 110287 ¶ 78 (*pro se* litigants are presumed to have full knowledge of court rules and procedures and must comply with them). We note that plaintiff attempted to use many of the same fictitious cases in the trial court through the supportive brief on his complaint for administrative review. Plaintiff was aware of the perils of AI-generated research yet chose to use it in a "[f]lagrant and unprincipled" manner anyway. *Baby Boy*, 2025 IL App (4th) 241427, ¶ 131. Additionally, many of plaintiff's citations to the record direct this court to page

numbers that do not exist, constituting a direct violation of Rule 341(h)(7). See IL. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

¶ 29　On November 6, 2025, this court held oral argument on this matter. Plaintiff was contrite when confronted and accepted full responsibility for his numerous violations of our rules and use of AI to generate the fictitious cases. The Board's counsel stood on its request to strike plaintiff's brief and dismiss the appeal as a suitable sanction for the violations. As such, we grant the Board's motion to strike plaintiff's appellate brief and dismiss the appeal.

¶ 30　　　　　　　　　　　　　III. CONCLUSION

¶ 31　For the reasons stated, we dismiss the appeal.

¶ 32　Appeal dismissed.