2025 IL App (2d) 250160-U
No. 2-25-0160
Order filed September 16, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| BKA HOLDINGS, LLC, | ) | Appeal from the Circuit Court |
| | ) | of De Kalb County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 24-EV-136 |
| | ) | |
| ROBERT SAM and KAREN SAM, | ) | Honorable |
| | ) | Joel D. Berg, |
| Defendants-Appellants. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Presiding Justice Kennedy and Justice Hutchinson concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Trial court did not abuse its discretion in denying defendants' motion to vacate agreed order or entering judgment of eviction.

¶ 2    This dispute arises between a landlord, plaintiff BKA Holdings, LLC, and two of its tenants, defendants Robert Sam and Karen Sam.  After plaintiff initiated eviction proceedings against defendants, the parties entered a settlement agreement whereby defendants agreed to move out of the residence in 53 days in exchange for plaintiff waiving over $10,000 in claims for past due rent, utilities and any other damages.  The trial court entered an agreed order reflecting that settlement agreement.  Defendants subsequently sought to have the agreed order vacated, which

the trial court denied. After defendants failed to move out by the agreed upon date, the trial court ordered the De Kalb County Sheriff to evict defendants. Defendants appeal from both the trial court's denial of their motion to vacate the agreed order and the trial court's eviction order. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4       This is the second time this landlord-tenant dispute is before us. See *BKA Holding, LLC, v. Sam*, 2023 IL App (2d) 230163 (*Sam I*). On August 21, 2022, the parties entered into a month-to-month lease agreement. On March 8, 2023, plaintiff filed an eviction complaint against defendants, seeking possession and past due rent. The complaint noted that the parties had reached an agreement that provided that if defendants made payments as agreed, vacated the premises by May 31, 2023, and did not cause any damage to the premises, the plaintiff would dismiss its eviction complaint with prejudice.

¶ 5       On March 10, 2023, plaintiff filed with the trial court the parties' agreement as well as a form titled "Eviction Order." That same day, the trial court entered both the agreed order and the eviction judgment.

¶ 6       On April 7, 2023, defendants filed a motion to vacate the eviction order and void the agreed order pursuant to section 2-1301(e) of the Code of Civil Procedure (Code) (735 ILCS 5/2-1301(e) (West 2020)). The motion was supported by Robert Sam's affidavit. He stated that he understood and intended that the agreement would allow him to avoid the entry of an eviction judgment.

¶ 7       On April 18, 2023, the trial court denied defendants' motion, finding that the parties' agreement permitted an eviction judgment before defendants' agreed move-out date. On November 28, 2023, this court vacated the trial court's order. *Sam I*, 2023 IL App (2d) 230163, ¶

23. We explained that the parties' agreement did not permit an eviction judgment before May 31, 2023. *Id.* ¶ 17.

¶ 8    On February 27, 2024, plaintiff provided defendants with 30-day written notice of its intention to terminate the month-to-month tenancy.  On March 29, 2024, plaintiff filed a verified complaint for possession, seeking to evict defendants due to their failure to vacate after proper notice of termination of tenancy was served.

¶ 9    On April 29, 2024, plaintiff filed a motion for summary judgment as to possession.  In February 2025, the parties reached an agreement, which is reflected in the trial court's (Judge Berg's) order of February 21, 2025.  That order provided in pertinent part:

"3.  Possession shall be stayed until 8:00 AM on April 15, 2025, and no eviction or enforcement shall be taken by the Sheriff before this date and time.

4.  If Defendants vacate the property before 8:00 am April 15, 2025, Plaintiff shall waive all claims for past due rent, utilities, and any other damages on April 16, 2025, and this partial order for possession will be vacated and the case sealed by agreement of the parties.

5.  Upon verification that Defendants have vacated, Plaintiff shall move to vacate this order within five (5) days of April 16, 2025, if not vacated on April 16, 2025.

6.  If the Sheriff is required to forcibly remove Defendants on April 15, 2025, this order shall remain in effect, not be vacated, the case will not be sealed, and the court will enter an order of damages against the Defendant[s] and in Plaintiff's favor of $0.

* * *

10.  Defendants retain the right to pursue, to the extent permitted by all applicable laws, the claims, lawsuits, or legal actions already filed against Plaintiff, captioned in the Northern District of Illinois, Federal Court as 25-cv-01420; and in the twenty-third judicial

circuit, 24 LA 69[;] however, Plaintiff retains the right to defend the claims to the fullest extent provided by law.

11.  However, Defendants waive any right to assert, file, or pursue any new claims, known or unknown, against Plaintiff or related entities, arising from the eviction case, this agreement, or its enforcement, including but not limited to any conduct occurring on February 15, 2025 after, including retaliatory eviction, coercion, duress, fraud, fraudulent inducement, misrepresentation, or any challenge to the legality of the eviction order entered pursuant to this agreement.

\* \* \*

14.  The stalking no-contact order pending in the Twenty-Third Judicial Circuit, 25 OP 33 shall remain in effect through April 16, 2025, after which it shall be voluntarily dismissed by Plaintiff through Plaintiff's undersigned counsel so long as Robert and Karen Sam have vacated the property voluntarily or forcibly, so long as Defendant Robert Sam shall not relocate within five (5) miles of Plaintiff Melissa Mobile's current Kane County residence."

¶ 10   On the same day Judge Berg entered the parties' agreed order, defendant Robert Sam filed an emergency motion in federal court.  That motion sought immediate intervention by the federal court alleging that Judge Waller had coerced defendant into signing the agreed order.  On March 13, 2025, the federal court dismissed Robert Sam's motion.

¶ 11   Also on March 13, 2025, defendants filed a motion to vacate the agreed order, claiming that plaintiff had violated the order.  Further, the motion alleged that the agreed order was the result of judicial interference by Judge Waller.  On March 17, 2025, the trial court denied defendant's motion to vacate the agreed order.

¶ 12     On April 15, 2025, Robert Sam filed for bankruptcy protection.

¶ 13     On April 16, 2025, trial court ordered the De Kalb County Sheriff to forcibly evict Karen Sam from the property at issue. The trial court specifically excluded Robert Sam from the order of eviction due to his bankruptcy filing. On that same day, defendants filed a notice of appeal in this court. Defendants appealed from the trial court's agreed order, the denial of the motion to vacate that order, and the eviction order. The case was docketed as No. 2-25-0160.

¶ 14     On April 22, 2025, we granted defendants' motion to stay the trial court's judgment pending this court resolution of their appeal. We conditioned the stay, however, on defendants' paying the full monthly rent of $1950.

¶ 15     On June 4, 2025, the bankruptcy court dismissed Robert's petition.

¶ 16     On June 30, 2025, the trial court entered an eviction order for possession against Robert. On that same day, defendants filed a notice of appeal. The case was docketed as No. 2-25-0264.

¶ 17     On July 1, 2025, this court granted defendants' motion to stay the trial court's judgment pending the resolution of the appeal and provided that the stay was based on the same terms as the stay in case No. 2-25-0160. We also granted defendants' motion to consolidate case Nos. 2-25-0160 and 2-25-0264 for purposes of review.

¶ 18                                  II. ANALYSIS

¶ 19     At the outset, we note the deficiencies in defendants' brief. Illinois Supreme Court Rules 341(h)(6) and (h)(7) (eff. May 25, 2018) require that the statement of facts and argument contain appropriate citations to pages of the record. Plaintiffs, however, cite their appendix, in violation of the rules. See *Estate of Prather v. Sherman Hospital Systems*, 2015 IL App (2d) 140723, ¶ 31 (it is a violation of Rule 341(h) to cite the appendix rather than the record). Plaintiffs also violate

Illinois Supreme Court Rule 341(h)(3) (eff. May 25, 2018) in that they do not include a standard of review for any of their arguments.

¶ 20    It has long been recognized that it is not the role of this court is to serve as an advocate for the parties. *Wells Fargo Bank, N.A. v. Sanders*, 2015 IL App (1st) 141272, ¶ 24. As such, this court "is not obligated to search the record for evidence on which to base reversal, and, unless reference is made to those parts of the record supporting reversal, the argument will not be considered." *Gowler v. Ferrell-Ross Co.*, 206 Ill. App. 3d 194, 213, (1990). That being said, while defendants' noncompliance certainly does not make our review easier, it also does not foreclose it. See *Monroy-Perez v. Sentry Select Insurance Co.*, 2025 IL App (1st) 241711, ¶ 31 (forfeiture is a limitation on the parties and not this court). We therefore exercise our discretion and choose to review defendants' arguments while strongly admonishing them to carefully observe the rules in the future. *In re Marriage of Montgomery*, 2020 IL App (2d) 180726-U, ¶ 47.

¶ 21    However, although we will overlook the shortcomings in defendants' appellants' brief, we cannot do the same with their reply brief. Plaintiff has filed a motion for sanctions due to defendants' citation to hallucinated authority in their reply brief. As plaintiff points out, defendants rely on four cases that were hallucinated by artificial intelligence (AI). The Illinois Appellate Court, Fourth District, recently considered this issue and stated:

> "[T]he Illinois Supreme Court AI policy explicitly permits the use of AI. However, attorneys must use AI tools wisely. We reiterate the supreme court's reminder that '[a]ll users must thoroughly review AI-generated content before submitting it in any court proceeding to ensure accuracy and compliance with legal and ethical obligations.' [Ill. Sup. Ct., Illinois Supreme Court Policy on Artificial Intelligence (Jan. 1, 2025), https://ilcourtsaudio.blob.core.windows.net/antilles-resources/resources/e43964ab-8874-

4b7a-be4e-63af019cb6f7/Illinois% 20Supreme% 20Court% 20AI% 20Policy.pdf [https://perma.cc/WCE6-WZE5]]. Flagrant and unprincipled use of AI without ensuring the accuracy of the generated response 'is an abuse of the adversary system' (*Mata* [v. *Avianca, Inc.*, 678 F. Supp. 3d 443, 461 (S.D.N.Y. 2023]), as it wastes court resources that would be better spent elsewhere." *In re Baby Boy*, 2025 IL App (4th) 241427, ¶ 131.

¶ 22    In *Baby Boy*, the reviewing court found that the petitioner's attorney's careless use of AI warranted sanctions. The court then ordered that the attorney disgorge the payment that he had received for his services, fined him $1,000, and referred him to the Illinois Attorney Registration and Disciplinary Commission based on his violation of the rules of professional conduct. *Id.* ¶¶ 129-130, 132.

¶ 23    Here, we do not believe defendants' status as *pro se* litigants excuse their careless reliance on AI. See *Holzrichter v. Yorath*, 2013 IL App (1st) 110287 ¶ 78 (*pro se* litigants are presumed to have full knowledge of court rules and procedures and must comply with them). We further note that the trial court previously reprimanded defendants for their careless use of AI-generated research. *Mata*, 678 F. Supp. 3d at 463-64 (appropriate sanction is based in part on whether party was previously warned of improper conduct). Defendants were thus aware of the perils of AI-generated research yet chose to use it in a "[f]lagrant and unprincipled" manner anyway. *Baby Boy*, 2025 IL App (4th) 241427, ¶ 131. We therefore grant plaintiff's motion for sanctions and strike defendants' reply brief. See *Mata*, 678 F. Supp 3d at 465 (striking an offending document is an appropriate sanction). We also grant plaintiff's motion for attorney fees and costs for filing the motion for sanctions and researching the hallucinated authority. Plaintiff shall file a statement of reasonable expenses and attorney fees within 14 days incurred in filing the motion for sanctions and researching the hallucinated authority. Defendants will then have seven days to respond to

that statement. This court will then file an order determining the amount of the sanctions to be imposed upon defendants. See *Pedigo v. Youngblood*, 2015 IL App (4th) 140222, ¶ 22.

¶ 24 Turning to the merits of this appeal, defendants raise five contentions: (1) the eviction action violated a federal bankruptcy discharge injunction which prohibits creditors from attempting to collect discharged debts; (2) the action was rooted in fraudulent claims, alleging unpaid rent; (3) that defendants were the victims of a retaliatory eviction; (4) the trial court's agreed order was void; and (5) the agreed order should be vacated because it was the result of coercion.

¶ 25 We begin by considering the trial court's agreed order and whether the trial court erred in not vacating that order. Section 2-1301(e) of the Code provides that a court may "set aside any final order or judgment upon any terms and conditions that shall be reasonable" when a motion to do so is filed within 30 days of the order or judgment. 735 ILCS 5/2-1301(e) (West 2024). In addressing such a request, " '[the overriding consideration is simply whether or not substantial justice is being done between the litigants.' " *Draper & Kramer, Inc. v. King*, 2014 IL App (1st) 132073, ¶ 23 (quoting *In re Haley D.*, 2011 IL 110886, ¶ 57). Further:

> " 'Whether substantial justice is being achieved by vacating a judgment or order is not subject to precise definition, but relevant considerations include diligence or the lack thereof, the existence of a meritorious defense, the severity of the penalty resulting from the order or judgment, and the relative hardships on the parties from granting or denying vacatur.' " *Id.* (quoting *Jackson v. Bailey*, 384 Ill. App. 3d 546, 549 (2008).

A trial court's decision on whether to grant a motion under section 2-1301(e) is discretionary; thus, we review that decision for an abuse of discretion. *Id.* ¶ 26 (citing *Haley D.*, 2011 IL 110886, ¶ 69.) A trial court abuses its discretion if its ruling is arbitrary, fanciful, or unreasonable or no

reasonable person would take the view adopted by the trial court, or when its ruling rests on an error of law. *People v. Olsen*, 2015 IL App (2d) 140267, ¶ 11.

¶ 26    "[A]greed orders are effectively the parties' private contractual agreement," entered by a court. *Draper & Kramer*, 2014 IL App (1st) 132073, ¶ 28. Accordingly, the principles of contract law apply when considering their meaning and scope. *Id.* ¶ 27. "The primary objective in construing a contract is to give effect to the intent of the parties." *Gallagher v. Lenart*, 226 Ill. 2d 208, 232 (2007). The language of a contract, given its plain and ordinary meaning, is the best indication of the parties' intent. *Id.* at 233. "Moreover, because words derive their meaning from the context in which they are used, a contract must be construed as a whole, viewing each part in light of the others." *Id.* When construing contracts, courts attempt to give effect to every provision, if possible, because it must be assumed that every provision was intended to serve a purpose. See *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 362 (2006). The construction of a contract is an issue of law, which we review *de novo*. *Gallagher*, 226 Ill. 2d at 219.

¶ 27    Based on these principles, we consider whether "substantial justice" required the trial court to vacate the agreed order. The agreed order provided that, if defendants moved out by April 15, 2025, plaintiff would waive all claims for past due rent, utilities, and any other damages. Further, even if defendants did not move out by that date and the sheriff was required to forcibly remove them, the agreement provided that the trial court would enter an order of damages against defendants and in plaintiff's favor in the amount of $0. Thus, defendants' first contention—that plaintiff was improperly trying to recover money from them that had already been discharged in bankruptcy—is without merit because plaintiff was not trying to recover any money from them. Rather, the agreement indicates that plaintiff just wanted defendants to leave the leased property.

¶ 28    Defendants' second contention—that plaintiff's eviction action was rooted in fraudulent claims based on allegations of unpaid rent—is also without merit.  Section 9-207 of the Forcible Entry and Detainer Act provides that:

> "[I]n all cases of tenancy for any term less than one year, other than tenancy from week to week, where the tenant holds over without special agreement, the landlord may terminate the tenancy by 30 days' notice, in writing, and may maintain an action for eviction or ejectment."  735 ILCS 5/9-207(b) (West 2024).

¶ 29    Noticeably absent from section 9-207 is an obligation imposed on the landlord to explain why he wants to terminate the lease with the tenant.  As was explained by our supreme court in *Chicago Housing Authority v. Stewart*, 40 Ill. 2d 23, 27 (1968):

> "When a lease expires by lapse of time, or when the lessee is notified that the lease will not be renewed for another term, it is immaterial what, if any covenant has been broken.  Obviously, the selection of a tenant on a month-to month basis cannot carry with it a continuing and indefinite right to tenure as long as no covenant is broken."

¶ 30    We note that there is an exception to the above rule as, under the Landlord Retaliation Act, "[a] landlord may not knowingly terminate a tenancy *** because the tenant has in good faith *** complained of code violations applicable to the premises to the relevant governmental agency *** or exercised any right or remedy provided by law."  P.A. 103-831 (eff. Jan 1, 2025) (adding 765 ILCS 721/1 *et seq.*).  However, "[a]n action is not retaliatory if the landlord can prove a legitimate, non-retaliatory basis for the action; or the landlord began the action before the tenant engaged in the protected activity."  *Id.*

¶ 31    Defendants' assertion that plaintiff's eviction was based on a fraudulent claim of unpaid rent does not constitute an improper act of landlord retaliation.  Rather, even if defendants were

currently paying their rent, plaintiff could still seek to terminate the lease when it ended and evict them if they did not leave the premises. *Stewart*, 40 Ill. 2d at 27.

¶ 32    Seizing upon the exception noted above regarding retaliatory evictions, defendants next contend that they were the victims of a retaliatory eviction because plaintiff was upset that (1) defendants won the appeal in *Sam I* and (2) defendants reported building code violations to the Village of Sycamore. The record does not support this argument. First, just because defendants were victorious in *Sam I*, that did not give them the right to live in the leased property for an unlimited time. *Id.* As defendants only had a month-to-month lease, plaintiff could legitimately terminate the lease after giving proper notice. 735 ILCS 5/9-207(b) (West 2024). Second, the Village of Sycamore found that defendants' complaints of building code violations had either been resolved or were not actionable because defendants would not allow plaintiff access to the residence to address the alleged issues.

¶ 33    Moreover, even if defendants' allegations were true, that would not be a basis to set aside the agreed order. The recently enacted Landlord Retaliation Act provides that if a landlord violates that Act, the tenant may (1) terminate the rental agreement and get his security deposit back; (2) recover possession of the premises if the landlord has dispossessed him, and (3) recover an amount equal to and not more than two months' rent. P.A. 103-831 (eff. Jan. 1, 2025) (adding 765 ILCS 721/10). Here, the agreed order provided that defendants could live at the residence for an additional 53 days rent-free, and they would not have to pay any past due rent (alleged to be over $10,000, which was equivalent to more than five months' rent). Thus, the agreed order provided defendants with relief better than they would have received had they been able to establish a claim of retaliatory eviction.

¶ 34    We further note that in the context of complaining that they were the victims of a retaliatory

eviction, defendants also argue that the Village of Sycamore and the Housing Authority of De Kalb County conspired with plaintiff to make them homeless.  However, as that is an issue beyond defendants' continuing right to possess the property (735 ILCS 5/9-106 (West 2024) (only matters germane to the issue of possession may be raised in an eviction case)), any alleged conspiracy is not a basis to disturb that order.

¶ 35    Defendants' fourth contention is that the agreed order is void because (1) it purported to dismiss a case outside of its jurisdiction and (2) it set an eviction date before any writ of possession was issued.

¶ 36    The record reveals that Melissa Mobile, an agent of plaintiff, had obtained a stalking no-contact order in the 23rd Judicial Circuit against defendant Robert Sam due to menacing e-mails that he had sent her.  The agreed order provided that the stalking no-contact order would be voluntarily dismissed if defendants vacated the property by April 16, 2025, and did not relocate within five miles of Mobile's Kane County residence.   After the agreed order was entered, the Illinois Supreme Court reassigned the stalking case to the 22nd Judicial Circuit.  Defendants thereafter sought  a hearing on the stalking order and to vacate the agreed order. They argued that the voluntary dismissal of the stalking case was a material part of the agreed order, and as the trial court now lacked jurisdiction to enforce it, the entire agreement must be vacated.

¶ 37    In response, plaintiff argues that defendants actively prevented performance of the agreed order by insisting that there be hearing on the stalking order after it was reassigned to a different circuit.  Had the defendants not insisted on a hearing and moved out of the residence by April 15, 2025, then the petition for the stalking no-contact order would have been dismissed and there would have been no jurisdictional issues.  Relying on *Empress Casino Joliet Corp. v. Averus, Inc.*, 2020 IL App (1st) 192071, ¶ 41, plaintiff argues that a party who prevents performance by the

other cannot later claim nonperformance as a defense or grounds for vacatur.

¶ 38     We agree with plaintiff. Defendants' insistence on an immediate hearing on the stalking order constituted an attempt to undermine the agreed order. Defendants cannot profit from their own malfeasance. *Id.* Further, defendants' purported concerns that the stalking case could no longer be dismissed because it was pending before a different judge is without merit. Had defendants moved out of the residence when the agreed order required them to do so, the stalking case would have been dismissed, and plaintiff would have been estopped from bringing that same stalking case in a different jurisdiction. See *People v. Jones*, 301 Ill. App. 3d 608, 609-10 (1998) (the doctrine of collateral estoppel provides that when a valid, final judgment determines an issue of ultimate fact, the same parties cannot litigate the issue in any future lawsuit).

¶ 39     Defendants' argument that the trial court entered a judgment of eviction before their right to possession ended is also without merit. This is the same argument that defendants successfully raised in *Sam I*. On remand, however, the trial court carefully ensured that no judgment of eviction would be entered against defendants until their right to possession ended.

¶ 40     Defendants' final argument is that they were coerced into accepting the agreed order based on promises of financial assistance from Judge Waller. The record does not support this contention. On February 10, 2025, Robert Sam sued Judge Waller in federal court, asserting claims of conspiracy, constitutional violations, bribery, obstruction of justice and retaliation. Ten days later defendants agreed to the order entered by Judge Berg. Defendants specifically indicated that they understood everything in the agreement and that they wanted it enforced. It strains credulity that defendants could be coerced into an agreement by someone who they had a pending lawsuit against.

¶ 41 In sum, there is nothing in the agreed order that demonstrates there was anything unjust about it. The trial court therefore did not abuse its discretion in not vacating that order. Further, based on the agreed order, the trial court did not err in entering a judgment of eviction against both defendants.

¶ 42                                   III. CONCLUSION

¶ 43 For the foregoing reasons, the judgment of the circuit court of De Kalb County is affirmed. Additionally, we grant plaintiff's motion for sanctions. The stay we imposed on defendants' eviction during this appeal shall remain in effect until 8 am on September 23, 2025.

¶ 44 Affirmed; stay lifted.