**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (3d) 240628-U

Order filed April 9, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| ROBERT S. HULVAT, | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| Plaintiff-Appellant, | ) | Du Page County, Illinois, |
| | ) | |
| v. | ) | Appeal No. 3-24-0628 |
| | ) | Circuit Nos. 23-LA-858, 04-D-2177 |
| | ) | |
| JULI GUMINA, STG DIVORCE LAW f/k/a | ) | Honorable |
| SULLIVAN, TAYLOR, GUMINA & | ) | Jennifer L. Barron, |
| PALMER, P.C., and JENNIFER B. HULVAT, | ) | Judge, Presiding. |
| | ) | |
| Defendants-Appellees. | ) | |

_____

JUSTICE BERTANI delivered the judgment of the court.
Justices Holdridge and Anderson concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:    Plaintiff's misuse of artificial intelligence in his appellate brief violates Illinois Supreme Court policy and rules, and defendants' motion for sanctions is granted. Absolute litigation privilege barred complaint alleging civil conspiracy and unauthorized filing based on the alteration of an agreed order before its entry in post-dissolution proceedings.

¶ 2    This case involves a stand-alone lawsuit that alleges a former wife and her attorney surreptitiously substituted language in an order that differed from the language her former husband

agreed to before its submission to the court in post-dissolution proceedings. Plaintiff, Robert S. Hulvat, proceeding self-represented, appeals the circuit court's dismissal of his complaint which named his former spouse, Jennifer B. Hulvat; Juli Gumina, Jennifer's attorney in the post-dissolution proceedings; and Gumina's law firm, STG Divorce Law (STG) in two joint counts of civil conspiracy and unauthorized filing and a separate count of forgery against Gumina alone based on the alleged misconduct. On appeal, Robert argues the court erred in dismissing his civil conspiracy and unauthorized filing counts with prejudice. For the reasons that follow, we affirm the judgment of the circuit court.

¶ 3        Separate from the merits of his appeal, this court issued a rule to show cause against Robert as to why he should not be sanctioned for filing a brief produced using artificial intelligence (AI) that contained citations to nonexistent authorities and fictitious holdings. Defendants' request to strike his brief and dismiss his appeal as well as the issue of an award of attorney fees incurred from defending against Robert's improper use of AI were taken with the appeal.

¶ 4                                I. BACKGROUND

¶ 5        On October 19, 2004, the circuit court of Du Page County entered a judgment for dissolution of marriage (case No. 04-D-2177) dissolving Robert and Jennifer's seven-year marriage. Two children were born to the marriage. The dissolution judgment incorporated a joint parenting agreement and marital settlement agreement, the latter establishing Robert's monthly child support obligation. The joint parenting agreement directed Jennifer to assume control over the children's college savings plans that had been created pursuant to section 529 of the Internal Revenue Code (26 U.S.C. § 529 (West 2004)) (529 account) during the marriage. Neither agreement addressed contribution for higher education expenses.

¶ 6                            A. Petition for Contribution

2

¶ 7        In 2017, their eldest child enrolled in an out-of-state university and Jennifer, then self-represented, filed a petition for Robert to contribute to anticipated expenses. 750 ILCS 5/513(a) (West 2018). Thereafter, Gumina entered an appearance on Jennifer's behalf, and Robert filed a petition to terminate his child support obligation.

¶ 8        The following facts concerning the negotiations of Jennifer's and Robert's petitions are based on the record, the e-mail communications, and exhibits attached to Robert's complaint, and the defendants' combined motions to dismiss. Although Robert and Jennifer obtained legal representation, they negotiated privately to resolve their petitions. After back-and-forth negotiations, they reached an agreement which modified Robert's child support obligation and he agreed to withdraw his petition in return. It further apportioned contributions of each parent to their eldest child's college expenses. Jennifer retained custody of the 529 account, but half of its balance was allocated to Robert to use in furtherance of his contribution. Relevant to this appeal, it directed Robert to create and fund a separate dedicated savings account for the benefit of his eldest child to fulfill the remainder of his contribution.

¶ 9        Two days before a scheduled status hearing, Jennifer e-mailed Robert a proposed order containing their agreement and a separate signature page with her signature. She requested that he sign and return the signature page. Robert complied and attached the executed signature page to an e-mail indicating he was instructing his attorney not to attend the hearing. The following day, Jennifer erroneously sent a prior version of the agreement and the executed signature page to Gumina. On September 6, 2017, Gumina alone appeared and presented the errant version of the agreed order with the attached executed signature page to the court, which entered the order.

¶ 10        Two days later, Jennifer e-mailed Robert to confirm that the order was entered without incident. Robert responded that the order entered was different from the one he had agreed to.

3

Jennifer was contrite in her responding e-mail, accepted responsibility, and apologized for her mistake. She noted, however, that the only difference between the order agreed upon and the one entered was language in the eighth paragraph that addressed the particulars of the dedicated savings account. In short, the errant order included two provisions that were not agreed upon which established (1) their eldest child as sole beneficiary of the dedicated savings account and (2) deadlines for disclosing financial statements to one another related to the 529 account and the dedicated savings account. She proposed the following courses of action to correct her error: "[w]e can either go back into court with the fixed #8 and have the judge sign an entirely new amended total order, OR you can send (or I can send) an email indicating [w]hat number 8 should be."

¶ 11       Robert agreed to the second course of action. He sent Jennifer an e-mail correcting paragraph eight by removing language that their eldest child was the sole beneficiary of the saving's account and establishing a quarterly deadline for the exchange of financial documents related to the 529 and dedicated savings accounts. Jennifer agreed with this correction. Neither Robert nor Jennifer formalized the correction by presenting it to the court.

¶ 12                      B. Petitions Related to the Agreed Order

¶ 13       Approximately a year later, on November 21, 2018, Jennifer filed a petition for rule to show cause concerning Robert's alleged failure to comply with the agreed order. The petition averred that Robert did not contribute to the college expenses and had not provided credible evidence that he created the dedicated savings account the agreed order required. It requested that a rule issue requiring Robert to show cause why he should not be held in indirect civil contempt. Robert's response asserted in part that the subject agreed order was not the one that he had signed. The court issued a rule against him on January 8, 2019.

4

¶ 14 On January 24, 2019, Jennifer filed a petition to correct paragraph eight of the agreed order and modify college contribution. The petition explained that two days after the order had been entered "the parties agreed in writing to correct terms of the Agreed Order to be followed by both parties," an allegation that Robert later admitted in his response. On the same day, Robert filed a petition for sanctions pursuant to Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018), asserting that, despite knowledge of its defect, neither Jennifer nor her attorneys sought to correct the error in the September 6, 2017, order before filing her petition for rule to show cause. Jennifer's answer to Robert's petition asserted her attorneys were unaware of the agreed order's error until Robert filed his answer to her petition, and that the uncorrected error did not relate to Robert's violations as alleged in her petition for rule to show cause.

¶ 15 In April 2023, the court vacated the erroneous order and the rule issued against Robert and entered an order which accurately reflected their agreement retroactive to September 6, 2017. Robert subsequently withdrew his petition for sanctions against Gumina and STG.

¶ 16 C. Civil Lawsuit

¶ 17 Robert filed a complaint in Cook County (case No. 22-L-11157) on December 16, 2022, against Jennifer, Gumina, and STG arising out of purported misconduct related to filing the September 6, 2017, agreed order. He alleged Gumina submitted a version of the order that was more favorable to her client, a version not agreed upon. The complaint further alleged that despite Robert bringing up the error to Jennifer "almost immediately" after the order was entered, the defendants did nothing to amend the order and instead filed a rule to show cause that he expended "large sums" to defend against. Robert sought relief through three separate causes of action. Count I alleged civil conspiracy against all defendants, asserting they acted in concert to enter the supposed agreed order for Jennifer's benefit and to Robert's detriment. Count II alleged

unauthorized filing against all defendants in that submitting the order was "an actionable wrong" in violation of rules 3.3 and 3.4 of the Illinois Rules of Professional Conduct. Ill. R. Prof'l Conduct (2010) Rs. 3.3, 3.4 (eff. Jan. 1, 2010). Count III alleged forgery against Gumina based on the improper, unauthorized copying of Robert's signature with the intent of defrauding him when she submitted the agreed order. 720 ILCS 5/17-3 (West 2022). While Robert attached a number of e-mails as an exhibit to his complaint relating to his and Jennifer's negotiations regarding the agreed order, he neglected to include those in which Jennifer admitted her error and which acknowledged their actual agreement. Robert's civil action was transferred to Du Page County in case No. 23-LA-858 and consolidated with the post-dissolution matters.

¶ 18    Defendants moved to dismiss Robert's complaint in respective combined motions brought under section 2-619.1 of the Code of Civil Procedure (Code). 735 ILCS 5/2-619.1 (West 2024). Both motions argued Robert's lawsuit was barred by the absolute litigation privilege. *Id.* § 2-619(a)(9). Gumina and STG's motion also argued *inter alia* that there is no private right of action for forgery and that the three causes of action were insufficiently pled. *Id.* § 2-615. Jennifer's motion supplementally argued Robert's action was untimely based on the statute of limitations, that a principal and agent cannot conspire, and the two counts directed against her were insufficiently pled. *Id.* §§ 2-615, 2-619(a)(5), (9).

¶ 19    The court heard and granted defendants' motions and dismissed Robert's complaint with prejudice. Its October 1, 2024, written ruling held that the complaint failed to allege facts sufficient to state a claim for each cause of action under section 2-615. It dismissed the unauthorized filing count (count II) and forgery count (count III) with prejudice on these grounds. It noted that the facts alleged failed to support the tort of unauthorized filing, which concerns instituting a lawsuit without permission from a putative plaintiff. See *Safeway Insurance Co. v. Spinak*, 267 Ill. App.

6

3d 513, 516 (1994). Further, it explained there is no private right of action for forgery, and that Robert conceded the issue by failing to address it in his response to defendants' motions.

¶ 20    Regarding the civil conspiracy count (count I), the court found that the complaint failed to allege the requisite elements of an unlawful act or a cognizable injury necessary to support a claim. It stated "[w]hile it is difficult to imagine how this count could ever be re-pled to sufficiently allege civil conspiracy, it is conceivably possible" and dismissed the count without prejudice pursuant to section 2-615 before addressing the affirmative matters under section 2-619. It then held that the affirmative matters raised by defendants pursuant to section 2-619 were dispositive to defeat that claim. First, it held that the absolute litigation privilege applied finding that the submission of the erroneous agreed order was an action governed by the privilege and was correctly invoked by all defendants. It found that the unrebutted evidence from defendants' motions demonstrated that the inclusion of the draft wording into the agreed order was accidental and no unlawful act was committed. Given the agreement to correct the error "almost immediately" upon its discovery, the court held there could be no injury as a matter of law and any expenses incurred "relative to this mistake were unnecessary and entirely self-inflicted." Second, it concluded that Robert's December 16, 2022, complaint was barred by the five-year statute of limitations given his "almost immediate[ ]" discovery of the error in September 2017. 735 ILCS 5/13-205 (West 2024).

¶ 21    Robert timely appealed.

¶ 22                            D. Appellate Brief Violation

¶ 23    Robert filed his initial appellate brief on March 4, 2025. In their response, defendants Gumina and STG included a motion for sanctions against Robert on account of his brief violating the Illinois Supreme Court Policy on AI and certain Illinois Supreme Court rules by citing nonexistent authority and fictitious holdings. They requested we strike Robert's appellate brief and

7

dismiss the appeal on this basis. Thereafter, Robert conceded to this wrongdoing and moved for leave to file an amended appellate brief. Defendants opposed Robert's motion on the basis of time and expenses incurred.

¶ 24    On June 3, 2025, this court entered contemporaneous orders related to Robert's motion for leave and defendants' motion for sanctions. We allowed Robert's motion for leave to file an amended brief, withdrew his original brief, and denied his request to strike defendants' pending motion to strike. Separately, on this court's own motion, we ordered Robert to show cause why he should not be sanctioned for his improper filing. We also directed defendants to file affidavits averring to the expenses incurred in responding to Robert's appellate brief, later clarifying that these expenses should include efforts expended in responding to both Robert's original and amended briefs. We address defendants' motion for sanctions and their fee petition below.

¶ 25                                    II. ANALYSIS

¶ 26    On appeal, Robert challenges the circuit court's dismissal of his complaint and argues it abused its discretion by granting dismissal with prejudice. His amended brief is disorganized and contains wide-ranging appellate argument. He argues that he properly pled the civil conspiracy count and that the circuit court misapplied the affirmative defenses it found barred this cause of action. He also argues the unauthorized filing count is supported by evidence and should withstand dismissal. Akin to his response to the defendants' motions in the trial court, he forgoes any discussion of the dismissal of the forgery count and it is therefore waived. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited."). He also raises newfound due process and ethical concerns beyond the dismissal of his complaint. Those issues are waived. *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 536 (1996) ("It is well settled that issues not raised in the trial court are deemed waived and may not be raised for the first time on appeal.").

8

¶ 27                                    A. Sanctions

¶ 28        We consider the request for sanctions in light of this court's order directing Robert to show

cause as to why he should not be sanctioned based on his violations of Illinois Supreme Court rules

and AI policy by citing nonexistent authorities and fictitious holdings in his appellate brief. Before

us are defendants Gumina and STG's request to strike Robert's brief and their petition for attorney

fees.

¶ 29        Robert's initial brief included citations to nine nonexistent cases (*Bjorlin v. Aluminum Co.

of America*, 261 Ill. App. 3d 552 (1994); *In re Estate of Drawve*, 119 Ill. App. 2d 487 (1970); *In

re Marriage of Lewis*, 213 Ill. App. 3d 1042 (1991); *In re Marriage of Royster*, 278 Ill. App. 3d

1076 (1996); *In re Williams*, 2012 IL 113475; *Krumwiede v. Tremco, Inc.*, 2014 IL App (4th)

130733; *Ontario Sewing Machine Co. v. Industrial Comm'n*, 258 Ill. App. 3d 972 (1994); *Salgado

v. Marquez*, 2012 IL App (1st) 111890; *Suttonhouse v. Rockford Savings & Loan Ass'n*, 94 Ill.

App. 3d 125 (1981)). Robert employed these nonexistent cases to further his argument, and in one

instance, quoted language from *Krumwiede v. Tremco, Inc.*, 2014 IL App (4th) 130733, ¶ 41, to

support the proposition that dismissal with prejudice is "a drastic sanction to be employed only as

a last resort." In fact, *Krumwiede*, a real case, involved the appeal of a wrongful death products

liability action, has nothing to do with dismissal of a complaint, contains no such quotation in the

disposition, and is correctly cited as *Krumwiede v. Tremco, Inc.*, 2020 IL App (4th) 180434.

Equally troublesome are citations to existing cases with misrepresented holdings, such as the

incorrect assertion that *In re Marriage of Lehr*, 317 Ill. App. 3d 853, 858 (2000), a spousal

maintenance appeal, involved a holding concerning "fraud upon the court."

¶ 30        Robert acknowledged these improper citations were the result of using generative AI in

drafting his brief. In a written response to the rule to show cause, he argues his status as a self-

9

represented litigant, his reliance upon a well-known generative legal research tool which he asserts was done in good faith, and his efforts to promptly correct his error by filing an amended brief should weigh against sanctioning his conduct. Counsel for defendants Gumina and STG claim $8,960 in expenses and fees incurred from defending against Robert's original and amended brief. Robert objects to defendants' fee request stating, in part, that the fees are unreasonable and excessive.

¶ 31       Robert's reliance on fictitious authority is a pervasive, nascent, and "very serious issue" afflicting courts as the use and reliance on generative AI in preparing legal filings becomes more commonplace. *In re Baby Boy*, 2025 IL App (4th) 241427, ¶ 57. Our supreme court's policy authorizes the use of AI when compliant with legal and ethical standards. Ill. Sup. Ct., *Illinois Supreme Court Policy on Artificial Intelligence* (Jan. 1, 2025), https://ilcourtsaudio.blob.core.windows.net/antilles-resources/resources/e43964ab-8874-4b7a-be4e-63af019cb6f7/Illinois%20Supreme%20Court%20AI%20Policy.pdf (AI Policy). To adhere to these standards, the policy forewarns that "[a]ll users must thoroughly review AI-generated content before submitting it in any court proceeding," that "[u]nsubstantiated *** AI-generated content that *** obscures truth-finding and decision-making will not be tolerated," and identifies self-represented litigants as "accountable for their final work product." *Id.*

¶ 32       Illinois Supreme Court Rule 375 (eff. Feb. 1, 1994), gives discretion to a reviewing court, on its own initiative, to impose an appropriate sanction upon a party if it determines that the party willfully failed to comply with the rules governing appeal or filed a frivolous appeal. Rule 375(a) provides that appropriate sanctions for violating appeal rules

> "may include an order that a party be barred from presenting a claim or defense relating to any issue to which refusal or failure to comply with the rules relates, or

that judgment be entered on that issue as to the other party, or that a dismissal of a party's appeal as to that issue be entered, or that any portion of a party's brief relating to that issue be stricken. Additionally, sanctions involving an order to pay a fine, where appropriate, may also be ordered against any party or attorney for a party or parties." Ill. S. Ct. R. 375(a) (eff. Feb. 1, 1994).

At least one court has concluded that the "intentional" use of AI and the "intentional" failure to review the resulting citations for accuracy satisfies the willful requirement of a failure to comply with rules governing appeals under Rule 375(a). *Baby Boy*, 2025 IL App (4th) 241427, ¶ 115. Citation to nonexistent cases for principles of law that do not exist also constitutes a violation of Illinois Supreme Court Rule 347(h)(7) (eff. Oct. 1, 2020), that requires an appellant's brief "contain the contentions *** and reasons therefor, with citation of the authorities *** relied on." *Id.* ¶ 110.

¶ 33        Rule 375(b) allows for the imposition of an appropriate sanction upon a party, "after consideration of an appeal *** it is determined that the appeal *** itself is frivolous." Ill. S. Ct. R. 375(b) (eff. Feb. 1, 1994). Rule 375(b) sanctions are punitive; the rule's purpose is to condemn and punish a litigant's abusive conduct. *Chernyakova v. Puppala*, 2019 IL App (1st) 173066, ¶ 40. The act of citing fictitious cases in an appellate brief is deemed violative of Rule 375(b) and aspects of an appeal have been found frivolous by reason of fictitious citations. *Baby Boy*, 2025 IL App (4th) 241427, ¶¶ 119, 127. Frivolity is determined under an objective standard, and an appeal is deemed frivolous if it would not have been brought by " 'a reasonable, prudent attorney' " in good faith. *Id.* ¶ 117 (quoting *In re Marriage of Lindell*, 2023 IL App (2d) 220055, ¶ 25). " 'A fake opinion is not "existing law" and citation to a fake opinion does not provide a non-frivolous ground for extending, modifying, or reversing existing law, or for establishing new law.' " *Id.* ¶ 118

11

(quoting *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 461 (S.D.N.Y. 2023)). Appropriate sanctions for a Rule 375(b) violation may include reasonable attorney fees. Ill. S. Ct. R. 375(b) (eff. Feb. 1, 1994).

¶ 34    Robert's self-represented status does not excuse his misuse of AI. Our supreme court clearly extends its AI Policy to self-represented litigants. AI Policy, *supra*. Ensuring the accuracy of AI-generated content before court submission is an obligation shared by "[a]ll users." *Id.* In Illinois, self-represented litigants must comply with rules of procedure as if he or she were an attorney and more lenient treatment is not afforded based on self-represented status. See *Holzrichter v. Yorath*, 2013 IL App (1st) 110287, ¶ 78. As for sanctioning a self-represented litigant's deficient brief for rule noncompliance, reviewing courts have afforded some latitude where the issues presented on appeal are clear. *Parkway Bank & Trust Co. v. Korzen*, 2013 IL App (1st) 130380, ¶ 85. Nevertheless, "when the line is crossed" under these circumstances, Rule 375 sanction rules are enforced. *Id.* "The imposition of Rule 375 sanctions is left entirely to the discretion of the reviewing court." *Id.* ¶ 87.

¶ 35    To date, the other districts that have addressed this issue have done so by fashioning suitably strict sanctions in efforts to curb this violation. The Fourth District in *In re Baby Boy*, imposed a fee sanction under Rule 375(a) and (b) against the appellant's attorney related to his representation in a termination of parental rights appeal. 2025 IL App (4th) 241427, ¶¶ 7, 134. Following a rule to show cause concerning numerous citations to nonexistent authorities in the appellant brief and the appellant attorney's confession to AI violations, he was ordered to disgorge the payment received from working on the appeal, pay an additional $1,000 fine, and a copy of the opinion was sent to the Attorney Registration and Disciplinary Commission (ARDC). *Id.* ¶¶ 94-105, 129-30, 132. In a nonprecedential order, the Fourth District issued a similar sanction—a

$1,000 monetary fine upon counsel and a copy of the decision sent to the ARDC—when that attorney made the same violations in a separate appeal. *In re A.S.*, 2025 IL App (4th) 250298-U, ¶¶ 19-20, 22.

¶ 36 The Second District has addressed the issue in four nonprecedential orders, two of which involved self-represented litigants' misuse of AI that resulted in granting motions to strike the offending briefs. *Pletcher v. Village of Libertyville Police Pension Board*, 2025 IL App (2d) 240416-U, ¶ 29; *BKA Holdings, LLC v. Sam*, 2025 IL App (2d) 250160-U, ¶ 23; *In re S.A.*, 2025 IL App (2d) 250280-U, ¶ 87; *In re A.R. & N.R.*, 2026 IL App (2d) 250299-U, ¶ 50. As the AI violations were committed in the self-represented appellant's brief, the *Pletcher* court granted appellee's motion to strike the brief and thus dismissed the appeal. *Pletcher*, 2025 IL App (2d) 240416-U, ¶¶ 11, 29. In *BKA Holdings, LLC*, the court struck the self-represented litigant's reply brief based on AI violations and granted appellee's motion for attorney fees and costs in relation to filing the motion for sanctions and researching the hallucinated authorities. *BKA Holdings, LLC*, 2025 IL App (2d) 250160-U, ¶ 23. In *In re S.A.*, the Second District noted fictitious quotations and holdings from existing cases in an appellant's brief were "likely hallucinated by artificial intelligence" but reached the merits of the case involving the termination of parental rights as it implicated "a fundamental liberty interest." 2025 IL App (2d) 250280-U, ¶¶ 80, 85, 87; *A.R. & N.R.*, 2026 IL App (2d) 250299-U, ¶ 50 (same).

¶ 37 Robert's response to the rule to show cause herein runs afoul of the case law indicating self-represented litigants are governed by the same standards of licensed counsel. We decline however to strike his brief and dismiss his appeal. We conclude that Robert violated both Rule 375(a) and (b), that the violation of Rule 375(a) was willful, and that sanctions are appropriate. *Baby Boy*, 2025 IL App (4th) 241427, ¶ 114. We further conclude that imposing an award of fees

13

based on Robert's AI violation is the appropriate sanction in this matter for the same reason the court imposed attorney fees in *BKA Holdings, LLC*, which also involved a self-represented litigant—to make the aggrieved party whole. 2025 IL App (2d) 250160-U, ¶ 23. When fashioning an appropriate sanction, reviewing courts should consider whether the offending party has acted in bad faith, whether sanctions would serve as a deterrent from similar conduct, and the merits of the parties' positions. *Mote v. Estate of McManus*, 2025 IL App (4th) 241307, ¶ 84. In contrast to the cases referenced above, a review of the record reveals no indication that Robert has made similar AI violations in the circuit court. See *Pletcher*, 2025 IL App (2d) 240416-U, ¶ 28; see also *BKA Holdings, LLC*, 2025 IL App (2d) 250160-U, ¶ 23. Nonetheless, we grant defendants' motion for sanctions pursuant to Rule 375(b).

¶ 38        In his objection to defendants' fee request, Robert argues the requested $8,960 attorney fees and costs is excessive and unreasonable, and such a sizable request "epitomizes why *pro se* litigants fear the legal system." A monetary penalty in this context should impress upon all litigants the caution one must undertake when utilizing AI in brief preparation and the solemnity of filing documents before the court. Robert's objection does not include a statement that he cannot afford the attorney fees or that the fee would cause him substantial financial harm. See *Chernyakova*, 2019 IL App (1st) 173066, ¶ 42.

¶ 39        An attorney presenting a fee petition has the burden of establishing the reasonable value of his services. *In re Estate of Callahan*, 144 Ill. 2d 32, 43 (1991). Only those fees which are reasonable will be allowed. *Kaiser v. MEPC American Properties, Inc.*, 164 Ill. App. 3d 978, 983 (1987). The party seeking fees carries the burden of establishing that the fees sought are reasonable. *Id.* A proper fee consists of reasonable charges for reasonable services; however, to justify a fee award, the movant cannot simply submit a mere compilation of hours multiplied by a

14

fixed hourly rate or bills issued to the client, since this type of information, without more, fails to provide the court with sufficient information as to their reasonableness—a matter which cannot be determined on the basis of conjecture or on the opinion or conclusions of the attorney seeking the fees. *Id.* at 983-84. Rather, any fee petition must identify the services performed, by whom they were performed, the time expended thereon and the hourly rate charged for said services. *Id.* at 984. Because these factors are critical, the movant must present "detailed records maintained during the course of the litigation containing facts and computations upon which the charges are predicated." *Id.* Once presented with this information, the court should then review other relevant considerations

> "such as the skill and standing of the attorneys, the nature of the case, the novelty and/or difficulty of the issues and work involved, the importance of the matter, the degree of responsibility required, the usual and customary charges for comparable services, the benefit to the client [citation], and whether there is a reasonable connection between the fees and the amount involved in the litigation [citation]."
>
> *Id.*; *Callahan*, 144 Ill.2d at 44.

The court may also use its own knowledge and experience in determining whether a fee is reasonable. *Kieken v. City of Joliet*, 2023 IL App (3d) 220392, ¶ 34.

¶ 40 The fee affidavit provided by Gumina and STG's counsel seeks an award of $8,960 for fees and costs associated with addressing the AI violations, while the supporting billing record indicates a total of $8,914 in fees and costs. In the first instance, we conclude that the billing statements contain the requisite detailed information on the services performed and the time expended thereon such that the claim can be properly evaluated. While the discovery of errant or nonexistent citations is not novel or difficult, we conclude that the hourly rate of $230 is

15

considerably below the reasonable, usual, and customary rates for both trial and appellate services. The crux of the issue in this case is whether the amount claimed was reasonably necessary to address the use of errant AI citations.

¶ 41    Gumina and STG chose to file a complete response brief which included a motion to strike Robert's brief and dismiss the appeal as a sanction for the errant citations. This could have readily been accomplished by the filing of a dispositive motion pursuant to Illinois Supreme Court Rule 361(a) and (h). Ill. S. Ct. R. 361(a), (h) (eff. April 15, 2024). As such, we conclude that the appropriate sanction should be those fees reasonably incurred in discovering the violations and presenting a motion to this court to address them.

¶ 42    Turning to the billing record which itemizes fees incurred between February and July 2025, the February 28 sum of $138 and the May 1 sum of $1,058 (the first indication of discovery of the errant citations) are reasonably related to the appropriate sanction noted above. The intervening charges for reviewing the record on appeal and undertaking the drafting of a statement of facts and starting the brief itself are actions that would have been undertaken in the absence of the errant citations and are thus disallowed. We find the 3.9 hours billed for reviewing Robert's six-page motion to file an amended brief and the drafting of a five-page objection thereto is not reasonable and award $345 for those services. The 4.1 hours billed on June 3 for $943 to review versions of Robert's briefs and the review and drafting of the motion to clarify this court's orders are entirely related to Robert's errors, as are a June 4 bill of $138 for revising their motion, a June 10 charge of $161 for the review of the rule issued by this court, and a July 14 bill of $368 for communications with Robert regarding his objection to their motion for leave to file an amended response brief. This court awards fees in the sum of $3,151 in favor of Gumina and STG and against Robert, plus costs of $27 for a total of $3,178. With regard to each approved fee above, we

16

conclude that the time spent and fees were reasonable and necessarily incurred to address the task visited upon Gumina and STG's counsel stemming from Robert's violations. While a July 11 bill includes the task of drafting the motion to file the amended response, we cannot readily separate that rather menial task from the more substantive work listed in that entry. Lastly, we deem certain fees listed after June 10 were not incurred as a result of Robert's violations and counsel's actions would have been necessary had Robert's initial brief been compliant with the rules governing appeals.

¶ 43    While additional sanctions in terms of fines payable to this court could be appropriate under the circumstances, we decline to do so in that the award of fees is sufficient to deter others from engaging in similar conduct. Judgment enters in favor of Gumina and STG and against Robert S. Hulvat in the sum of $3,178 for fees and costs pursuant to Illinois Supreme Court Rule 366. Ill. S. Ct. R. 366(a)(5), (c) (eff. Feb. 1, 1994).

¶ 44                                B. Underlying Action

¶ 45    Turning to the merits, the circuit court granted defendants' motions to dismiss Robert's complaint under sections 2-615 and 2-619 of the Code. 735 ILCS 5/2-615, 2-619 (West 2024). Defendants' combined motions were brought pursuant to section 2-619.1 of the Code, which permits a party to move for dismissal under sections 2-615 and 2-619 in a single motion. *Id.* § 2-619.1. A section 2-615 motion to dismiss challenges the legal sufficiency of a complaint. *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 25. In ruling on a section 2-615 motion to dismiss, only the facts on the face of the pleadings, matters subject to judicial notice, and judicial admissions in the record may be considered. *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 473 (2009).

17

¶ 46    A section 2-619 motion to dismiss admits the legal sufficiency of a complaint but asserts the action is barred based on an affirmative matter outside of the complaint. *Reynolds, LLC*, 2013 IL App (4th) 120139, ¶ 31; *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006). Here, the court held that Robert's allegation of civil conspiracy was barred by the statute of limitations (735 ILCS 5/2-619(a)(5) (West 2024)) and the absolute litigation privilege (*id.* § 2-619(a)(9)). Under subsection 2-619(a)(9), the affirmative matter must be apparent on the face of the complaint; " 'otherwise, the motion must be supported by affidavits or certain other evidentiary materials.' " *Reynolds, LLC*, 2013 IL App (4th) 120139, ¶ 37 (quoting *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 377 (2003)). All pleadings and supporting documents are interpreted in the light most favorable to the nonmoving party. *Coley v. Bradshaw & Range Funeral Home, P.C.*, 2020 IL App (2d) 190627, ¶ 16. Under both dismissal sections, a court accepts all well-pleaded facts and reasonable inferences drawn from those facts as true. *Id.*; *Pooh-Bah Enterprises, Inc.*, 232 Ill. 2d at 473. Conversely, mere conclusions unsupported by specific facts are not accepted as true. *In re Estate of Powell*, 2014 IL 115997, ¶ 12.

¶ 47    The standard of review applied to a judgment on a combined motion to dismiss is *de novo*. *In re Estate of Khan*, 2021 IL App (1st) 200278, ¶ 20. We likewise employ *de novo* review to the question of law regarding the applicability of the absolute litigation privilege. *Scarpelli v. McDermott Will & Emery LLP*, 2018 IL App (1st) 170874, ¶ 14. Under this standard, our review is "unconstrained by the reasoning of the trial court." *Zameer v. City of Chicago*, 2013 IL App (1st) 120198, ¶ 12. We may affirm the court's judgment on any grounds supported by the record. *DiCosola v. Ryan*, 2015 IL App (1st) 150007, ¶ 8.

¶ 48    We hold that the absolute litigation privilege applies to the conduct alleged in Robert's complaint. The issue of absolute litigation privilege is treated as an affirmative defense and

appropriately raised in a section 2-619 motion to dismiss. *Johnson v. Johnson & Bell, Ltd.*, 2014 IL App (1st) 122677, ¶ 15. The privilege immunizes from civil action "certain statements and conduct by attorneys in the course of litigation." *Doe v. Williams McCarthy, LLP*, 2017 IL App (2d) 160860, ¶ 19. The privilege is based on section 586 of the Restatement (Second) of Torts, which states:

> "An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding." Restatement (Second) of Torts § 586 (1977).

Section 587 includes comparable language that extends the privilege to private litigants whom "enjoy[ ] the same privilege concerning a proceeding to which he is a party." *Johnson*, 2014 IL App (1st) 122677, ¶ 15 (citing Restatement (Second) of Torts § 587 (1977)); *Thompson v. Frank*, 313 Ill. App. 3d 661, 664 (2000). Motives are irrelevant in the application of the privilege. See *O'Callaghan v. Satherlie*, 2015 IL App (1st) 142152, ¶ 25. Rather, communications or conduct must satisfy a "pertinency requirement" in order to fall within the privilege's ambit. *Scarpelli*, 2018 IL App (1st) 170874, ¶ 19. That is, the scrutinized statement or action must be related to the pending litigation and be in furtherance of representation. *O'Callaghan*, 2015 IL App (1st) 142152, ¶ 25. The pertinency requirement is not strictly applied, and all doubts are resolved in favor of pertinency. *Id.* However, the pertinency requirement prevents an attorney or party from shielding unrelated misconduct or communications from liability. See *id.* ¶ 27; see also *Thompson*, 313 Ill. App. 3d at 664 (declining to extend absolute litigation privilege to a libel action concerning a defamatory letter sent by one party's attorney to the spouse of the opposing party).

19

¶ 49    While the privilege historically applied to defamation actions, it has expanded to bar other causes of action under the rationale that the "privilege would be meaningless if a party could merely recast its cause of action to avoid the privilege's effect." *O'Callaghan*, 2015 IL App (1st) 142152, ¶ 26. Similar conduct alleged in Robert's lawsuit has been recognized as conduct subject to the absolute litigation privilege. In *O'Callaghan*, plaintiffs sued an attorney and her firm that represented plaintiff's adversaries in an underlying toxic black mold litigation, alleging that the attorney and her firm caused intentional infliction of severe emotional distress and were strictly liable for ultrahazardous activity related to the mold. *Id.* ¶¶ 4-5, 8-9. In addition to a slew of purported discovery misconduct, the attorney and her firm allegedly "obtained a court order against the" plaintiffs. *Id.* ¶ 29. These actions, however, were pertinent to the underlying action and done in furtherance of representation. *Id.* Therefore, the cause was barred by the privilege, and the complaint was properly dismissed. *Id.* ¶ 33.

¶ 50    Here, the claims of civil conspiracy and unauthorized filing in counts I and II of Robert's complaint rest on identical allegations of misconduct. Robert alleges that Gumina took the errant copy of the order that Jennifer had provided to her and caused it to be entered. The transfer, submission, and entry of the agreed order, however, pertained to post-dissolution proceedings. By securing the order's entry on behalf of and at the direction of her client, Gumina acted in furtherance of her representation and brought resolution to Jennifer and Robert's outstanding petitions. Thus, the absolute litigation privilege applies to the alleged conduct and dismissal of Robert's complaint is warranted.

¶ 51    We briefly note that the record reflects Robert has withdrawn his motion for sanctions related to the misconduct concerning the entry of the agreed order. As many plaintiffs have attempted in similar actions, Robert filed a motion for sanctions against defendants in tandem with

20

the filing of his suit at bar. Therefore, while the preferred " 'redress' " for alleged misconduct from judicial proceedings in the same litigation is not to pursue litigation against a new party, but to utilize "traditional motion practice and sanctions procedures," Robert has elected to forgo this remedy. *Kim v. State Farm Mutual Automobile Insurance Co.*, 2021 IL App (1st) 200135, ¶ 38 (quoting *Johnson*, 2014 IL App (1st) 122677, ¶ 19).

¶ 52  Robert also argues the court erred in dismissing his complaint with prejudice, thereby depriving him of an opportunity to replead. Under sections 2-615 or 2-619, dismissal with prejudice should be granted "only where it is clear that the plaintiff can prove no set of facts that would entitle it to relief." *Lake Point Tower Condominium Ass'n v. Waller*, 2017 IL App (1st) 162072, ¶ 21. A court's decision to dismiss a complaint with prejudice is reviewed for an abuse of discretion. *Id.* Given our determination that Robert's lawsuit is barred by the absolute litigation privilege, the court did not abuse its discretion in granting dismissal with prejudice.

¶ 53  In addition to challenging the court's final judgment, Robert argues the court erred in its factual findings supporting dismissal. Namely, Robert asserts the court's finding that the submission of draft language in the agreed order was accidental is a mischaracterization when the documentary evidence reveals the alteration was deliberate fraud. We disagree. We determine whether a circuit court's factual findings from a hearing on a 2-619 motion to dismiss are against the manifest weight of the evidence. See *Kirby v. Jarrett*, 190 Ill. App. 3d 8, 13 (1989). Findings are against the manifest weight of the evidence only where the opposite conclusion is clearly evident or its determination is unreasonable, arbitrary, or not based on the evidence presented. *In re K.E.-K.*, 2018 IL App (3d) 180026, ¶ 13. As the court explained in its written order, its factual findings were based on the unrebutted evidence from defendants' motions. In addition to the e-mail correspondences attached to the complaint and motions to dismiss, Jennifer attached an

21

affidavit to her motion averring that she "emailed what [she] then believed was a final version of the agreed order" to Gumina on September 5, 2017, and at the time it was entered, she did not know the agreed order was the incorrect version. Moreover, the e-mail chain attached to each of the defendants' motions to dismiss included the portions in which Jennifer took responsibility for the error and the parties agreed to memorialize the correct language for paragraph eight. In fact, it was Robert who sent the corrected language, which was agreed to by Jennifer on that date. Again, it is noteworthy that Robert's complaint attached only a portion of the email chain and omitted these salient subsequent correspondences. Robert's response failed to challenge Jennifer's affidavit, provide a counter affidavit, or refute this evidentiary fact whatsoever. *Piser v. State Farm Mutual Automobile Insurance Co.*, 405 Ill. App. 3d 341, 353 (2010). Therefore, the fact that Jennifer accidentally included the draft language into the copy of the order that she sent to her attorney, which was later entered by the court, was deemed admitted. *Id.*

¶ 54                                    III. CONCLUSION

¶ 55        The judgment of the circuit court of Du Page County is affirmed. We order plaintiff, Robert S. Hulvat, to pay defendants Juli Gumina and STG Divorce Law's appellate attorney fees necessary to address the AI violations presented in his appellate brief as a sanction pursuant to Illinois Supreme Court Rule 375(b). Judgment for fees and costs is entered in favor of defendants for $3,178.

¶ 56        Affirmed.

22